## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSWELLA MILLER<br>7107 Galgate Drive<br>Springfield, VA  22152<br><br>    &<br><br>ROBIN E. WALLACE<br>7107 Galgate Drive<br>Springfield, VA  22152<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLIEDBARTON SECURITY<br>SERVICES, LLC<br>161 Washington Street, Suite 600<br>Conshohocken, PA  19428<br><br>Serve:  CT Corporation<br>         1015 15th Street, N.W.<br>         Suite 1000<br>         Washington, D.C.  20005<br><br>    Defendant. | Civil Action No. |

## <u>COMPLAINT</u>

COME NOW Plaintiffs Conswella Miller and Robin E. Wallace, by and through undersigned counsel, and states as follows:

1.      Plaintiffs brings this action pursuant to Title VII and 42 U.S.C. §1981 of the United States Civil Rights Act,  the District of Columbia Human Rights Act, breach of contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful termination against public policy, abuse of process, and defamation for discrimination and retaliation on the basis of race, gender, sexual

orientation and protected activity in employment.

## JURISDICTION AND VENUE

2. Jurisdiction of this court is founded pursuant to 28 U.S.C. §§1331 and 1367.

3. Venue lies in this Court, pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3) since the employment practices alleged to be unlawful were committed by defendant and its agents within the District of Columbia, defendant does business within the jurisdiction of this Court, and plaintiffs would have worked in this jurisdiction but for the alleged unlawful employment practice.

## PARTIES

4. Plaintiff, Conswella Miller ("Ms. Miller"), is an adult African-American female, a citizen of the United States and a bona fide resident of the Commonwealth of Virginia. At all times further relevant herein, Ms. Miller was an employee of AlliedBarton Security Services.

5. Plaintiff, Robin E. Wallace ("Ms. Wallace"), is an adult African-American female, a citizen of the United States and a bona fide resident of the Commonwealth of Virginia. At all times further relevant herein, Ms. Wallace was an employee of AlliedBarton Security Services.

6. Plaintiffs were married in a ceremony on March 9, 2013, in the District of Columbia. Under federal, District of Columbia and Virginia law, plaintiffs are a married couple with the same rights and privileges as a duly married heterosexual couple. Plaintiffs held themselves out as a married couple in defendant's workplace open and notoriously.

7. Defendant, AlliedBarton Security Services ("AlliedBarton"), is a private corporation with almost 60,000 employees and a leading provider of security officer services across the United States. AlliedBarton is incorporated in the state of Delaware and does business

as a foreign corporation in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

8.      Ms. Miller received a Masters of Education degree from Regent University in 2004 and a Bachelor of Science degree in Business Management from Grambling State University in 1988. She began her professional career in 1992 through 2009 as an elementary school teacher.

9.      In 2009, Ms. Miller began her employment tenure with defendant as the Administrative Assistant in the District of Columbia district. In 2010, Ms. Miller was promoted to District Support Manager in the D.C. district. In that capacity, Ms. Miller served as the "HR Coordinator" for the D.C. district. In 2014, Ms. Miller's title changed to Recruiting Manager for the D.C. and Northern Virginia districts, supervising four recruiters. Ms. Miller was the primary recruiter for the D.C. district.

10.     As the H.R. recruiting manager for the District of Columbia and Northern Virginia districts, Ms. Miller possessed full access credentials to defendant's HODES job applicant tracking platform.

11.     A 1979 graduate of Cheyney State College, Ms. Wallace spent two years in the United States Army as a Military Police Officer.  Following her Honorable Discharge from the military in 1986, Ms. Wallace worked for the Internal Revenue Service as an Inspector/Tax Fraud Investigative Aide.  In 1988, Ms. Wallace began her professional career in the private security industry at ACSS/ABM Security Services.  After leaving ACSS/ABM in 2000, Ms. Wallace successfully completed stints with Guardsmark Security, Cushman & Wakefield and DRS Technologies.

12.     In 2007, Ms. Wallace began her employment with AlliedBarton as a Site

3

Supervisor.

13.     By July 2010, Ms. Wallace had been promoted to the position of District Area Manager ("DAM") for the D.C. district, supervising up to ten (10) managers and six hundred (600) employees and assisting the District Manager ("DM") in overseeing and directing operational, financial and administrative functions.

14.     During most of their employment tenure, Ms. Miller and Ms. Wallace both worked in the D.C. district and communicated regularly through electronic mail throughout the workday regarding professional matters. For instance, by February 2014, Ms. Wallace, who after being demoted was assigned for the first time to the Maryland District, became increasingly frustrated with the formatting of various District reports, including its contact matrix and consolidated report. The contact matrix, in particular, was an excel spreadsheet containing various site location and client contact information. Having worked for many years in the Washington D.C. District, Ms. Wallace knew that D.C. had developed a contact spreadsheet that was comprehensive, concise and easy to use while in the field on site visits. Accordingly, on February 17, 2014, Ms. Wallace received from her wife, who worked for the D.C. District, the D.C. Matrix to use as a template for reformatting Maryland's spreadsheets, and Ms. Wallace encouraged her subordinates in Maryland to utilize D.C.'s format as a guide. Plaintiffs have never exchanged or accessed any of defendant's "trade secrets," including information regarding clients, such as names, telephone numbers, addresses, email addresses, terms of service contracts, and billing rates, for any other purpose than in performance of their professional duties to defendant.

15.     In June 2012, Ms. Wallace was promoted to the position of District Manager for the Silver Spring, Maryland district. This promotion made Ms. Wallace the highest-ranking

4

African-American woman in the entire company of almost 60,000 employees, and her duties required that she work from home most evenings.

16.     By March 2013, AlliedBarton advised Ms. Wallace that it was reorganizing several business units, including the Silver Spring district and she would be demoted back to DAM. Ms. Wallace protested the adverse action. Ms. Wallace, the only African-American woman out of about 100 District Managers in the entire company, was the only manager in the region to endure an adverse employment action because of any corporate downsizing, and the only District Manager *nationwide* effected by AlliedBarton's alleged restructuring in the spring of 2013.

17.     Ms. Wallace's demotion was substantially adverse to her as to her new  duties, responsibilities, professional stature, compensatory bonus structure and opportunities for advancement. No allegations regarding performance were ever raised by defendant relating to this demotion.

18.     On May 16, 2013, Ms. Wallace complained to AlliedBarton that her rights under the Civil Rights Act had been violated by the demotion.

19.     After lodging that complaint both Ms. Miller and Ms. Wallace endured hostile and retaliatory treatment, including exclusion from important meetings and calls, increased professional scrutiny and decreased administrative support.  Additionally, on June 18, 2013, only one month after Ms. Wallace's protected activity, Ms. Miller was the subject of an unwarranted and baseless disciplinary action.  Ms. Miller, who had been recognized with the Support Staff of the Year Award for the D.C. district in 2013, had never received any discipline during her entire professional tenure with AlliedBarton until Ms. Wallace engaged in protected activity under the United States Civil Rights Act.

20.     On June 19, 2013, Ms. Wallace filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

21.     On or about October 2, 2013, Ms. Miller was given a final written warning, without a valid basis,  for alleged performance deficits by Tim Price, her second line supervisor and defendant's Mid-Atlantic region HR Director, and placed, for the first time while working for defendant, on a Performance Improvement Plan on November 11 2013.

22.     On February 12, 2014, Ms. Wallace filed a civil complaint in the United States District Court for the District of Columbia. Civil Action No. 14-cv-203 (CKK). That matter is currently pending.

23.     On or about February 12, 2014, Ms. Wallace applied for an open District Manager for position for the Northern Virginia Region, via defendant's web-based applicant tracking program, "HODES."  Since Ms. Wallace had previously performed the duties of a District Manager successfully, she was undoubtedly qualified for the position.   Indeed, defendant scheduled Ms. Wallace to be interviewed for the position on April 19, 2014.

24.     On April 16, 2014, Ms. Wallace received an email generated by HODES that she had not been considered for the position. Ms. Wallace immediately contacted Tim Price, the recruiting HR manager for the position and the individual who had previously disciplined Ms. Miller, and inquired whether the interview was cancelled. Price responded that defendant was in the process of "migrating" its HR information from HODES to a new applicant management platform and that the notice was "mistakenly" issued by the HODES software. Price also told Ms. Wallace that every candidate had received the same email.

25.     Using her access credentials to HODES, Ms. Miller accessed the recruiting file for the District Manager position. Ms. Miller learned that Ms. Wallace was the only candidate to have the comment "Not Considered/Reviewed – Position Filled" associated with her name.

26.     Ms. Miller did not access any candidate applications and did not review any candidate applications. Further, Ms. Miller could not send any candidate applications to Ms. Wallace or any other individual who did not possess HODES access credentials.

27.     As HODES was a *secured* applicant-tracking environment, the security features *precluded* Ms. Miller or anyone else with access credentials from sending applicant information to individuals who did not possess access credentials.

28.     Ms. Wallace did not possess access credentials, and, accordingly, at no time did she ever receive any candidate applications, view any candidate applications or otherwise access any candidate applications, including her own.

29.     Price's representations to Ms. Wallace were false that every candidate had received the same notice sent to Ms. Wallace, but defendant continued the charade that Ms. Wallace's candidacy was being considered, nevertheless, by "interviewing" Ms. Wallace for the position in April 18, 2014. Throughout the interview, however, Price repeatedly discouraged Ms. Wallace from pursuing the promotion.

30.     In May 2014, Ms. Wallace was advised that the DM-NOVA position had been "eliminated" due to the loss of a single account.

31.     Defendant's discovery production and deposition testimony of its representatives further supports the questionable  circumstances of the supposed elimination of the DM-NOVA position.

32. On October 31, 2014, defendant suspended Ms. Wallace from her employment pending an investigation into her allegedly sending confidential company information to "unauthorized individuals." That same day, Ms. Miller was summarily terminated without investigation for also allegedly sending confidential company information to "unauthorized individuals."

33. Defendant later changed its justification for the adverse actions, articulating, instead, that it was suspending Ms. Wallace from her employment pending an investigation into her "receiving" candidate applications through HODES from Ms. Miller and that Ms. Miller was being terminated for allegedly "sending" candidate applications to Ms. Wallace's email account. Defendant also proffered as a basis for its adverse actions that Ms. Miller's sending Ms. Wallace the D.C. matrix that Ms. Wallace had used as a template for her work in defendant's Maryland district.

34. When defendant then demanded that Ms. Wallace submit to an interview with its corporate counsel outside the presence of her counsel in the Title VII litigation, Ms. Wallace refused and invoked her right to counsel to be present at any interview. Ms. Wallace then offered to submit an affidavit or otherwise cooperate with defendant's "investigation" with the assistance of her counsel. Ms. Wallace further represented that defendant's allegations were, and are, false. Defendant refused Ms. Wallace's reasonable attempts to cooperate with its investigation.

35. On November 13, 2014, defendant terminated Ms. Wallace for its belief that she was refusing to cooperate with its investigation.

36. Despite Defendant's erroneous prior allegations, Ms. Wallace was not terminated for "receiving" any candidate applications relating to the DM-NOVA recruitment or receiving any HODES information

37.     Defendant was unable to produce any evidence at the time of Ms. Wallace and Ms. Miller's terminations that Ms. Wallace had received, possessed or otherwise accessed any candidate applications relating to the DM-NOVA vacancy.

38.     To this day, defendant possesses no evidence that Ms. Wallace ever received, possessed or otherwise accessed any candidate applications relating to the DM-NOVA vacancy.

39.     Further, defendant admits "HODES is a secured system that is accessible only to a certain class of its employees via login credentials. HODES retains an access and modification log that includes timestamps and user information."

40.     Prior to terminating Ms. Miller and suspending Ms. Wallace, defendant knew that the HODES system *precluded* an employee with access credentials from "sending" applicant information to any individual *without* access credentials and, accordingly, its proffered justifications for the adverse actions were an *impossibility*.

41.     On December 15, 2015, Ms. Wallace filed a Charge of Discrimination with the EEOC protesting her and her wife's unlawful termination.

42.     On December 16, 2014, Ms. Wallace filed for leave to amend her civil complaint to add allegations for wrongful termination and retaliation. Defendant opposed Ms. Wallace's request for leave on the basis that it would be unfairly "prejudiced" by the additional litigation costs.

43.     On December 22, 2014, one month after Ms. Wallace's termination, defendant posted a job vacancy notice for the DM-NOVA position for which she had previously applied.

44.     At the same time it was protesting the amendment to Ms. Wallace's complaint, defendant was preparing and, on or about December 19, 2014, filed a civil action in the United States District Court for the Eastern District of Virginia, charging Ms. Miller with violation of

the federal Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq*., ("CFFA"), a quasi-criminal statute, and both plaintiffs with violations of the Virginia Trade Secrets Act, the Virginia Computer Fraud Act and breach of contract.

45.     Controlling authority in the United States Court of Appeals for the Fourth Circuit, however, clearly precluded liability under the CFAA for the conduct defendant alleged Ms. Miller engaged in.

46.     Defendant, accordingly, filed a quasi-criminal federal action against Ms. Miller in bad faith and for the sole purpose to harass, humiliate, punish, defame and retaliate against her and Ms. Wallace for engaging in protected activity.

47.     On March 28, 2015, defendant's civil claim against Ms. Miller under the CFFA was summarily dismissed for failure to state a claim upon which relief could be granted. The Eastern District declined to adjudicated defendant's state law and common law claims against plaintiffs.

48.     Plaintiffs did not engage in any misconduct as alleged by defendant and their terminations were unwarranted and unjustified.

49.     The adverse employment actions by defendant were the product of unlawful discrimination and in retaliation for Ms. Wallace and Ms. Miller's engaging and participation in protected activity.

50.     Upon information and belief, defendant has never affirmatively sued any employee, including the recently terminated District Manager for the District of Columbia district who, upon information and belief, was terminated for gross misconduct.

51.     On April 29, 2015, plaintiffs filed an Amended Charge of Discrimination with the EEOC for defendant's unlawful termination and malicious prosecution in violation of Title VII.

52.     Defendant has filed in a Virginia state court meritless state and common law actions against plaintiffs based on facts defendant knows to be materially false.

53.     More than 180 days have elapsed since Ms. Wallace's filing of a Charge of Discrimination based on defendant's failure to promote her to the DM-NOVA position and her and Ms. Miller's terminations. Accordingly, Ms. Wallace has exhausted her administrative remedies on those claims.

**FIRST CAUSE OF ACTION**
**Violation of Title VII - Race and Gender Discrimination (Ms. Wallace)**

54.     Plaintiff Wallace herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "53" as if originally pleaded herein.

55.     Defendant, through its agents or supervisors, unlawfully discriminated and denied plaintiff equal employment opportunities because of her race and gender when it imposed unwarranted adverse employment actions against her and subjected her to disparate treatment, including failure to promote to positions to which she was qualified and wrongfully terminated her, without cause of justification, in violation of Title VII of the United States Civil Rights Act of 1964, as amended.

56.     As a direct and proximate result of the illegal employment discrimination by Defendant, plaintiff has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

57.     Plaintiff is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized

and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award her, under Title VII of the Civil Rights Act, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b)     To award her, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award her, under Title VII of the Civil Rights Act, punitive damages in an amount of $300,000.00;

(d)     To award her, under Title VII of the Civil Rights Act, positions consistent with her experience and training and expungement of her personnel records;

(e)     To award her reasonable attorney's fees and costs of this action; and

(f)     To award her such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Violation of Title VII - Retaliation (Ms. Wallace)

58.     Plaintiff Wallace herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "57" as if originally pleaded herein.

59.     Defendant, through its agents or supervisors, unlawfully discriminated and denied plaintiff equal employment opportunities in retaliation for her engaging in protected activity when it imposed on her and Ms. Miller unwarranted adverse employment actions against them and subjected them to disparate treatment, including failure to promote to positions to which she was qualified and wrongfully terminated them, without cause of justification, in violation of Title VII of the United States Civil Rights Act of 1964, as amended.

60.     As a direct and proximate result of the illegal employment discrimination by

Defendant, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

61.     Plaintiffs are informed and believe that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for their federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award them, under Title VII of the Civil Rights Act, all the back and front pay and fringe benefits they have lost as a result of defendant's unlawful discrimination against them;

(b)     To award them, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award them, under Title VII of the Civil Rights Act, punitive damages in an amount of $300,000.00;

(d)     To award them, under Title VII of the Civil Rights Act, positions consistent with their experience and training and expungement of their personnel records;

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### Violation of 42 U.S.C. §1981 – Race Discrimination

62.     Plaintiffs  herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "61" as if originally pleaded herein.

63.     Defendant, through its agents or supervisors, unlawfully discriminated and denied

13

plaintiffs equal employment opportunities because of their race when it imposed unwarranted adverse employment actions against them and subjected them to disparate treatment, including failure to promote to positions to which they were qualified, the imposition of performance warnings leading to termination and wrongfully terminated their employment, without cause of justification, in violation of 42 U.S.C. §1981 of the Civil Rights Act of 1964, as amended.

64.     As a direct and proximate result of the illegal employment discrimination by Defendant, plaintiffs have suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

65.     Plaintiffs are informed and believe that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiffs respectfully pray this Court:

(a)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, all the back and front pay and fringe benefits they have lost as a result of defendant's unlawful discrimination against them;

(b)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, punitive damages in an amount of $5,000,000.00;

(d)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, positions consistent with their experience and training and expungement of their personnel records;

14

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Violation of 42 U.S.C. §1981 – Retaliation

66.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "65" as if originally pleaded herein.

67.     By the actions set out above, defendant subjected plaintiffs to unlawful retaliation and denied them the rights and privileges secured by the Civil Rights Act, when it denied them professional opportunities for which they were qualified, created a hostile work environment and subjected them to adverse employment actions, terminated their employment, and have filed meritless and defamatory civil actions against them, without cause or justification, because they had engaged in protected activity under the United States Civil Rights Act.

68.     As a direct and proximate result of the illegal employment action by defendant, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

69.     Plaintiffs are informed and believe that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, all the back and front pay and fringe benefits they have lost as a result of defendant's unlawful discrimination

against them;

(b)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, punitive damages in an amount of $5,000,000.00;

(d)     To award them, under 42 U.S.C. §1981 of the Civil Rights Act, positions consistent with their experience and training and expungement of their personnel records;

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Violation of the D.C. Human Rights Act Race, Gender and Sexual Orientation Discrimination

70.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "69" as if originally pleaded herein.

71.     By the actions set out above, defendant subjected plaintiffs to unlawful discrimination denied them the rights and privileges secured by the District of Columbia Human Rights Act, when it denied them professional opportunities for which they were qualified, created a hostile work environment and subjected them to adverse employment actions, when it imposed on them unwarranted discipline, failed to promote Ms. Wallace to the position of District Manager for Northern Virginia, terminated their employment and caused to be filed meritless civil claims against Ms. Miller and Ms. Wallace without cause or justification and under circumstances raising an inference of unlawful discrimination because of their race, gender and sexual orientation.

72.     As a direct and proximate result of the illegal employment discrimination by

Defendant, plaintiffs have suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

73.     Plaintiffs are informed and believe that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for their federally and state-conferred protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award them, under the D.C. Human Rights Act, all the back and front pay and fringe benefits they have lost as a result of defendant's unlawful discrimination against them;

(b)     To award them, under the D.C. Human Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award them, under the D.C. Human Rights Act, punitive damages in the amount of $5,000,000.00;

(d)     To award them, under the D.C. Human Rights Act, a position consistent with her experience and training and the expungement of their personnel records;

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

### SIXTH CAUSE OF ACTION
### Violation of the D.C. Human Rights Act - Retaliation

74.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "73" as if originally pleaded herein.

75.     By the actions set out above, defendant subjected plaintiffs to unlawful retaliation

and denied them the rights and privileges secured by the District of Columbia Human Rights Act, when it subjected them to disparate treatment and unequal employment opportunities, created a hostile and abusive work environment, terminated their employment and caused to be filed meritless and defamatory civil claims against them without cause or justification and under circumstances raising an inference of unlawful discrimination, because they had engaged and participated in protected activity under the D.C. Human Rights Act and United States Civil Rights Act.

76.     As a direct and proximate result of the illegal employment discrimination by Defendant, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

77.     Plaintiffs are informed and believe that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for their federally and state-conferred protected rights.   Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiffs respectfully pray this Court:

(a)     To award them, under the D.C. Human Rights Act, all the back and front pay and fringe benefits they have lost as a result of defendant's unlawful discrimination against them;

(b)     To award them, under the D.C. Human Rights Act, compensatory damages in an amount to be determined at trial;

(c)     To award them, under the D.C. Human Rights Act, punitive damages in the amount of $5,000,000.00;

(d)     To award them, under the D.C. Human Rights Act, a position consistent with their

18

experience and training and expungement of their personnel records;

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

### SEVENTH CAUSE OF ACTION
**Wrongful Termination in Violation of Public Policy**

78.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "77" as if originally pleaded herein.

79.     Defendant, through its agents or supervisors, unlawfully terminated plaintiffs' employment because of their race, gender sexual orientation and in retaliation for their engaging in protected activity.

80.     It is the public policy of the District of Columbia as expressed in the District of Columbia Human Rights Act, and in the common law, that individuals shall not be discriminated against in their employment on the basis of their race, gender, sexual orientation or for engaging in protected activity.

81.     As a direct and proximate result of defendant's termination of plaintiffs, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

82.     Plaintiffs are informed and believe that the outrageous conduct of defendant described above was done with malice and with conscious disregard for their state protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)     To award them all the back and front pay and fringe benefits they have lost as a result of defendant's wrongful termination of them;

(b)     To award them compensatory damages in an amount to be determined at trial;

(c)     To award them punitive damages in the amount of $5,000,000.00;

(d)     To award them positions consistent with their experience and training and expungement of their personnel records;

(e)     To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### Breach of Contract

83.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "82" as if originally pleaded herein.

84.     Plaintiffs were employed by defendant under written and oral contracts of employment which were modified and re-enforced by certain policies, practices, assurances and other express and implied statements of defendant.   In said contract, it was explicitly and implicitly agreed that plaintiffs would not be impeded in their job duties, and that they would be terminated only for cause. Plaintiffs entered into said contract, *inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon.

85.     At all times relevant herein, plaintiffs performed their obligations under their contract with defendant.   Defendant breached its express and implied contractual commitments to plaintiffs by terminating their employment without cause.

86.     At the time the parties entered into the contract, as alleged above, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a

20

breach, plaintiffs would suffer present and future loss of earnings as a foreseeable and probable result thereof.

87. As a direct and proximate result of defendant's termination of plaintiffs, plaintiffs have suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

WHEREFORE plaintiffs respectfully pray this Court:

(a) To award them all the back and front pay and fringe benefits they have lost as a result of defendant's breach of contract;

(b) To award them compensatory damages in an amount to be determined at trial;

(c) To award them punitive damages in the amount of $5,000,000.00;

(d) To award them positions consistent with their experience and training and expungement of their personnel records;

(e) To award them reasonable attorney's fees and costs of this action; and

(f) To award them such other and further relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

88. Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "87" as if originally pleaded herein.

89. Plaintiffs were employed by defendant under written and oral contracts of employment upon their hire and during the term of their employment. The basic terms of the agreement provided that plaintiffs' employment would be secure as long as their performances were satisfactory, that plaintiffs would not be impeded in their job duties or career expectations,

and that they would be terminated only for cause.  Plaintiffs entered into said contract, *inter alia*, to secure peace of mind and financial stability, and refrained from seeking employment elsewhere in reliance thereon.

90.    At all times relevant herein, plaintiffs performed their obligations under their contract with defendant.

91.    Defendant breached the covenant of good faith and fair dealing to plaintiffs by terminating their employment without cause.

92.    At the time the parties entered into the contract, as alleged above, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, plaintiffs would suffer present and future loss of earnings as a foreseeable and probable result thereof.

93.    As a direct and proximate result of defendant's termination of plaintiffs, plaintiffs have suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Plaintiffs have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

WHEREFORE plaintiffs respectfully pray this Court:

(a)    To award them all the back and front pay and fringe benefits they have lost as a result of defendant's breach of contract;

(b)    To award them compensatory damages in an amount to be determined at trial;

(c)    To award them punitive damages in the amount of $5,000,000.00;

(d)    To award them positions consistent with their experience and training and expungement of their personnel records;

(e)    To award them reasonable attorney's fees and costs of this action; and

(f)     To award them such other and further relief as this Court deems just and proper.

## TENTH CAUSE OF ACTION
### Defamation

94.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "93" as if originally pleaded herein.

95.     Plaintiffs are informed and believe, and based thereon alleges, that defendant, through its agents, supervisors or employees acting within the scope of their employment, caused to be published false and unprivileged communications tending to directly injure Plaintiffs and their business and professional reputation.   Specifically, defendant made untrue statements to other persons in Plaintiffs' profession and other third parties that Plaintiffs engaged in misconduct in the workplace.

96.     Plaintiffs are informed and believe, and based thereon alleges, that at the time defendant made these statements it knew or had reason to know that the statements were false.

97.     Defendant committed the above acts deliberately and intentionally, in an effort to injure and defame Plaintiffs' good names and professional reputations.

98.     As a direct and proximate result of defendant's defamation, Plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.   Plaintiffs have suffered and will continue to suffer a loss of earnings, injury to their personal and professional reputation and other employment benefits and job opportunities.

99.     Plaintiffs are informed and believe that the outrageous conduct of defendant described above was done with malice and with conscious disregard for their state protected rights.   Defendant, through its officers, managing agents and/or other supervisors authorized

23

and/or ratified the unlawful conduct.

WHEREFORE plaintiffs respectfully pray this Court:

(a)     To award them all the back and front pay and fringe benefits they have lost as a result of defendant's breach of contract;

(b)     To award them compensatory damages in an amount to be determined at trial;

(c)     To award them punitive damages in the amount of $5,000,000.00;

(d)     To award them reasonable attorney's fees and costs of this action; and

(e)     To award them such other and further relief as this Court deems just and proper.

**ELEVENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

100.     Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "99" as if originally pleaded herein.

101.     By the actions set out above, defendant intentionally subjected plaintiffs to discrimination and unlawful retaliation when it denied them professional opportunities for which they were qualified, created a hostile work environment and subjected them to adverse employment actions when it terminated their employment and caused to be filed meritless and defamatory civil claims against them.

102.     As a direct and proximate result of the illegal conduct by Defendant, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.

103.     Plaintiffs are informed and believe that the extreme and outrageous conduct of Defendant described above was done with malice as to exceed all possible bounds of decency, atrocious, intolerable in a civilized community and specifically calculated to cause plaintiffs

emotional harm. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiffs respectfully pray this Court:

(a)    To award them all the back and front pay and fringe benefits they have lost as a result of defendant's outrageous conduct;

(b)    To award them compensatory damages in an amount to be determined at trial;

(c)    To award them punitive damages in the amount of $5,000,000.00;

(d)    To award them reasonable attorney's fees and costs of this action; and

(e)    To award them such other and further relief as this Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

104.    Plaintiffs herein adopt and incorporate by reference all the allegations set forth in paragraphs "1" through "103" as if originally pleaded herein.

105.    By the actions set out above, defendant negligently subjected plaintiffs to discrimination and unlawful retaliation when it denied them professional opportunities for which they were qualified, created a hostile work environment and subjected them to adverse employment actions when it terminated their employment and caused to be filed meritless and defamatory civil claims against them.

106.    As a direct and proximate result of the illegal conduct by Defendant, plaintiffs have suffered, and continue to suffer, severe pain and suffering and extreme mental anguish and emotional distress.

107.    Plaintiffs are informed and believe that the extreme and outrageous conduct of Defendant described above was done with malice as to exceed all possible bounds of decency,

atrocious, intolerable in a civilized community and specifically calculated to cause plaintiffs emotional harm. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiffs respectfully pray this Court:

(a)     To award them all the back and front pay and fringe benefits they have lost as a result of defendant's outrageous conduct;

(b)     To award them compensatory damages in an amount to be determined at trial;

(c)     To award them punitive damages in the amount of $5,000,000.00;

(d)     To award them reasonable attorney's fees and costs of this action; and

(e)     To award them such other and further relief as this Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**Abuse of Process**
**(Ms. Miller)**

108.     Plaintiff Miller herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "107" as if originally pleaded herein.

109.     By the actions set out above, defendant subjected Ms. Miller to abuse of legal process by filing frivolous civil legal and ultimately dismissed claims in a court of law against her for the sole purpose of retaliating against her for engaging in activity protected by federal and state law and to cause her and her spouse extreme emotional distress.

110.     As a direct and proximate result of the abuse of process by Defendant, Ms. Miller has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Ms. Miller has suffered and will continue to suffer a loss of earnings, monetary damages, legal fees and other employment benefits and job opportunities.

111.     Ms. Miller is informed and believes that the outrageous conduct of Defendant

described above was done with malice and that it knew or should have known at the time process was initiated that its claims had no basis in fact or law. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)      To award her compensatory damages in an amount to be determined at trial;

(b)      To award her punitive damages in the amount of $5,000,000.00;

(c)      To award her reasonable attorney's fees and costs of this action; and

(d)      To award her such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Respectfully submitted,

*/s/ Gary T. Brown*
Gary T. Brown, Esq.
Gary T. Brown & Associates
gtbfirm@garytbrown.com
888 16th Street NW, Suite 800
Washington DC 20006
(202) 393-4900

*Counsel for Conswella Miller*

*/s/ Lisa Alexis Jones*
Lisa Alexis Jones, Esq.
Lisa Alexis Jones, PLLC
One Rockefeller Plaza
10th Floor
New York, N.Y.  10020-2003
(646) 756-2967
(888) 755-6778 (Fax)
ljones@lisaajones.com

*Counsel for Robin Wallace*

Dated: June 24, 2015

27